UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

LANA PEREZ and,                                              CASE NO.:  07-21794-CIV-MOORE/Garber
ELENA LEFFLER,

      Plaintiffs,

vs.

SAKS FIFTH AVENUE, INC., a foreign                **Plaintiffs' Second Amended Complaint**
Corporation, doing business in Florida,           **for Age Discrimination and Retaliation**

      Defendant.
_____/

     Plaintiffs, LANA PEREZ and ELENA LEFFLER ("PEREZ" and "LEFFLER" respectively), sue Defendant, SAKS FIFTH AVENUE, INC. ("SAKS").

## NATURE OF CLAIMS

     1.    This is an action for declaratory and injunctive relief and damages against SAKS to redress the deprivation of rights secured to PEREZ and LEFFLER by the Florida Civil Rights Act of 1992, §760.10 *et seq*., Florida Statutes ("FCRA") and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, et seq. ("ADEA") and the Fair Labor Standards Act, 29 U.S.C. § 216 when SAKS discriminated against them on the basis of their age and then wrongfully terminated them from their employment in retaliation for having complained about said age discrimination.

## JURISDICTION AND VENUE

     2.    This is an action for damages of more than $15,000.00, exclusive of interest costs and attorneys fees, which arises under the Florida Civil Rights Act of 1992, §760.10 *et seq*., Florida Statutes.

     3.    This Court is vested with jurisdiction to order an injunction, reinstatement, back

1

pay, front pay or any other equitable relief as may be proper, pursuant to 29 U.S.C. § 626(b).

    4.      Jurisdiction is founded on 28 U.S.C. § 1331 and 1343, 29 U.S.C. §§ 216(b) and 626(c)(1), and 29 U.S.C. §§ 216(b) and 626(c)(1).  The court has jurisdiction to grant declaratory and further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

    5.      Liquidated damages are sought pursuant to 29 U.S.C. § 626 (b).

    6.      Venue is proper in Miami-Dade County, Florida, where the claim arose and where the Defendant maintains the retail store where Plaintiffs were employed.  Defendant has sufficient contacts in Miami-Dade County in accordance with 28 U.S.C. §1391 (b).

**PARTIES AND COMPLIANCE WITH PROCEDURAL REQUIREMENTS**

    7.      PEREZ and LEFFLER each timely filed, on or about May 23, 2006, a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), and the Florida Commission on Human Relations (FCHR), a copy of Plaintiffs' respective Charges of Discrimination are attached hereto and marked as Composite Exhibit "A".

    8.      The EEOC issued a Letter of Determination on March 26, 2007 to both PEREZ and LEFFLER in which they determined that the "evidence obtained during the investigation establishes that there is reasonable cause to believe that Charging Party was discriminated against because of their age." A copy of said Letters finding cause to believe that SAKS engaged in age discrimination against PEREZ and LEFFLER are attached hereto and marked as Composite Exhibit "B".

    9.      Plaintiffs have therefore, complied fully with all conditions precedent and administrative prerequisites of the Florida Statute §760.11.

    10.      Plaintiffs PEREZ AND LEFFLER, at all times material, were residents of Miami-Dade County, Florida, and were employed as Sales Associates in Defendant's Bal Harbor, Florida store for 18 years and 14 years respectively in Bal Harbor, Miami-Dade County, Florida.

11.     Defendant, SAKS, is and was, at all times material, a foreign corporation, doing business in Bal Harbor in Miami-Dade County, Florida.  As to Plaintiffs' claims under the FCRA, SAKS is an "employer" as envisioned by Florida Statute §760.02 (7), Florida Statutes and as defined by 29 U.S.C. § 630 (b) and 42 U.S.C. § 2000e (b).  It is engaged in an industry affecting commerce, as envisioned by 29 U.S.C. § 630 (h) and 42 U.S.C. § 2000e (e) (4). Defendant has employed twenty (20) or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

## PEREZ'S GENERAL ALLEGATIONS

12.     Plaintiff PEREZ realleges and adopts, as if fully set forth, the allegations in paragraphs 1 through 11.

13.     PEREZ is over the age of forty (40) (D.O.B. 5/25/51) and is thus protected by the FCRA.

14.      PEREZ was qualified for her job as Sales Associate and had been performing above the level of SAKS legitimate and reasonable expectations, and had always received excellent performance appraisals.

15.     Notwithstanding PEREZ being qualified and exhibiting above standard job performance, she was terminated from her position at SAKS on April 5, 2006.

16.     PEREZ began working as a Sales Associate in the Bal Harbor location for SAKS on or about October of 1988.

17.     PEREZ worked in the women's high-end contemporary sportswear departments selling designer clothing. PEREZ was productive, successful, and brought in significant sales to SAKS throughout her employment.

18.     PEREZ had excellent books of business and a significant amount of repeat customers and clientele during her tenure at SAKS.

19.     Throughout the course of the last two (2) years of her employment, PEREZ noticed that almost all of the employees being hired in the contemporary sportswear department were under the age of forty (40).

20.     In or about October 2005, PEREZ complained to Alex in the Security Department about a younger associate that had threatened her in the contemporary department.  Following the recommendation of Alex in Security, PEREZ made a formal written complaint to Noel Sugruee in the Human Resource Department.

21.     On or about November 2005, PEREZ was told by her Manager, Raymond Terbecki, to go to the "back room" because she was **old**.

22.     The "back room" is the back area of the contemporary sportswear department in which there is much less customer traffic, and the work is harder because the merchandise consists of lower ticketed items, including mostly jeans and t-shirts. Most of PEREZ'S clientele did not shop in the "back room" area of SAKS, and her manager was aware of this.

23.     PEREZ immediately responded to her Manager, Raymond Terbecki that he was discriminating against her because of her age.

24.     PEREZ, on that same day, complained to Mindy Curtis, the Assistant Manager of the Store, and Gloria Salerno, Human Resources Manager about the discriminating conduct and treatment of her by her Manager, Raymond Terbecki.

25.     Ms. Curtis canceled Mr. Terbecki's directive for PEREZ to go to the "back room". However, Mr. Terbecki's treatment of PEREZ only became worse in the form of retaliation for PEREZ having complained about the discriminatory conduct and actions towards her.

26.     PEREZ originally had the line, Dolce and Gabana, but had given it up because of delivery problems and repeatedly continued to request another line from Mr. Terbecki.  PEREZ was told several times by Mr. Terbecki that he would get back to her, but instead continued to bypass

her with the available lucrative lines by assigning them to younger sales associates who had far less sales experience.

27.      PEREZ was only given a line when she finally confronted Mr. Terbecki in front of Ms. Curtis, the Assistant Store Manager and she was then given the same line back that she previously had (i.e. Dolce and Gabana).

28.      Mr. Terbecki, on several occasions, made many disparaging remarks to PEREZ such as calling her "harried", and that she "reminded him of his father".

29.      In addition to being treated in a discriminatory manner by her manager Mr. Terbecki, PEREZ was also being harassed by the younger sales associates in the Defendant's store.

30.      PEREZ complained to her Manager, Mr. Terbecki, and he asked her if she "wanted to go to the third floor?"  The third floor was a quiet and less desirable location to be placed in at the store with very little sales activity.  Mostly older employees were placed or moved to the third floor.

31.      PEREZ continued to be mistreated and harassed by the younger sales associates; and continued to bring her concerns about mistreatment and harassment by the younger employees to her Manager, Raymond Terbecki, Human Resource Manager, Gloria Salerno, Assistant Store Manager, Mindy Curtis or the Assistant Department Manager, Michele.

32.      SAKS did not do anything to remedy the age discrimination or retaliatory treatment.

33.      In December 2005, in a meeting with other older employees and Gloria Salerno, Human Resources Manager, told PEREZ not to cross her door with any complaints about anything.

34.      PEREZ'S working conditions became worse and continued to be subjected to discrimination and retaliation, and despite working hard and continuing to bring in significant sales to SAKS each month, she was treated with little or no respect at all.

35.      PEREZ was told on many occasions by Mr. Terbecki and Ms. Salerno, that she had no rights.

36.     PEREZ was reprimanded verbally and in writing after bringing complaints of age discrimination to her supervisors.

37.     It became apparent to PEREZ that SAKS was trying to push her out by making her experience at work so difficult that she would quit, but PEREZ needed her job and wanted to continue to succeed at SAKS the way that she had before the age discrimination and retaliation became so pervasive.  PEREZ wanted to be able to work with SAKS until the day that she retired.

38.     When it became apparent to SAKS that PEREZ had no intention of quitting, SAKS management invented a scenario whereby she was falsely accused of "stealing" from the store.

39.     Specifically, in the later part of the summer of 2005, SAKS held a seminar for all of their sales associates in which they told them that they were "empowered", and as such, they were authorized to give customers in certain situations a 10% or more discount to meet the prices of the competition in the marketplace, a 10% discount in the case of foreign customers attempting to open credit card accounts that required further processing, and a 10% discount for customers willing to purchase damaged merchandise.

40.     The store training program also instructed sales associates to make the customer feel comfortable during the return process and make the return based on the information presented by the customer and the information available in the SAKS computer system.

41.     On April 3, 2006, PEREZ was called into the Security Office and accused of "stealing" from SAKS by allowing said discounts and returns by Security Officer, Jennifer Hanno.

42.     Ms. Hanno attempted to pressure PEREZ to sign a promissory note to SAKS that she would repay the monies that she allegedly "stole."    However, PEREZ refused to sign any promissory note since she did not steal from the store and had been authorized to give the discounts that SAKS had specifically "empowered" her to at the training program.

43.     When PEREZ requested copies of the documents presented to her, Ms. Hanno

6

refused to give her copies of anything that she was requested to sign.

44.     On April 5, 2006, PEREZ was terminated.

45.     Following her termination from SAKS, PEREZ applied for unemployment compensation.

46.     Upon receipt of Determination Notice of Unemployment Compensation Claim Filed, SAKS contacted TALX – UC Express in the capacity of Unemployment Insurance Consultant and agent of SAKS.

47.     SAKS informed third party TALX – UC Express that PEREZ was discharged because she was "caught" giving unauthorized discounts to customers.  On June 2, 2006, TALX' representative, Jacque Roulette, wrote a letter to Florida Agency for Workforce Innovation Claims Center informing them of same. A copy of said letter is attached hereto and marked as Exhibit "C".

48.     Based on the letter from third party, Jacque Roulette, Hearing Officer Speas of the Agency for Workforce Innovation filed a Fact Finding Statement in which she determined that PEREZ had mishandled company funds.  A copy of said statement is attached hereto and marked as Exhibit "D".

49.     On June 8, 2006, PEREZ received a Notice of Determination informing her that her employment was denied, in that "claimant was discharged for mishandling company funds."

50.     Based on the communication from the third party, Jacque Roulette to Hearing Officer Speas, PEREZ' character was defamed and her unemployment compensation was unjustly denied.

51.     On June 18, 2006, PEREZ made a written request to the Agency for Workforce Innovation appealing the June 8, 2006 determination.

52.     On July 14, 2006, a telephonic hearing was held for PEREZ to appeal the June 8,

7

2006 determination.

53.    Jennifer Hanno, participated as an agent and representative for SAKS at the appeals hearing, at which time she testified to the Hearing Officer, a third person that PEREZ was terminated for "stealing from the company" by giving unauthorized discounts to customers.

54.    Ultimately, the Agency for Workforce Innovation reversed its decision, and PEREZ'S unemployment compensation benefits were reinstated.

55.    Age was a motivating factor in SAKS decision to terminate PEREZ from her employment.

56.    There existed no legitimate, non-discriminatory reason for SAKS to terminate PEREZ'S employment.

57.    PEREZ was treated differently than the younger sales associates.

58.    As a direct, natural and proximate result of the actions of SAKS, PEREZ has been injured, and has suffered a substantial loss of wages and benefits, embarrassment and ridicule.

59.    SAKS conduct towards PEREZ was in complete reckless disregard for the well codified laws established in the FCRA as it pertains to age discrimination and retaliation.

<u>**LEFFLER'S GENERAL ALLEGATIONS**</u>

60.    Plaintiff LEFFLER realleges and adopts, as if fully set forth, the allegations in paragraphs 1 through 11.

61.    LEFFLER is over the age of forty (40) (D.O.B. 6/9/47 respectively), and is thus protected by the FCRA.

62.     LEFFLER was qualified for her job as Sales Associate and had been performing above the level of SAKS legitimate and reasonable expectations, and had always received excellent performance appraisals.

63.    Notwithstanding LEFFLER being qualified and exhibiting above standard job

performance, she was terminated from her position at SAKS on April 5, 2006.

64.    LEFFLER began working as a Sales Associate in the Bal Harbor location for SAKS on or about April of 1992.

65.    LEFFLER worked in the women's high-end contemporary sportswear departments selling designer clothing. LEFFLER was productive, successful, and brought in significant sales to SAKS throughout her employment.

66.    LEFFLER had excellent books of business and a significant amount of repeat customers and clientele during her tenure at SAKS.

67.    Throughout the course of the last two (2) years that LEFFLER worked at SAKS, most all of the employees being hired in the contemporary sportswear department were under the age of forty (40).

68.    LEFFLER, was called into the office sometime after June 2005, and told by her Manager, Raymond Terbecki, that she was being moved to the back room.

69.    The "back room" was located in the back area of the contemporary sportswear department in which there is much less customer traffic, and the work is harder because the merchandise consists of lower ticketed items, including mostly jeans and t-shirts. Most of LEFFLER'S clientele did not shop in the "back room" area of SAKS and her Manager was well aware of this.

70.    A couple of days later, LEFFLER went to see the Assistant Store Manager, Mindy Curtis and complained about the actions by her Manager, Raymond Terbecki moving her to the back room.

71.    LEFFLER returned to the main selling area only after the younger female employee that Mr. Terbecki had hired to replace her in her previous working area was fired during training.

72.    LEFFLER also witnessed Mr. Terbecki treat PEREZ in a discriminatory manner

DEUTSCH ROTBART & ASSOCIATES, P.A.

BOCA RATON • FORT LAUDERDALE • MIAMI

based upon her age and listened to his discriminatory comments towards each of them during the course of their employment.

73.    After LEFFLER complained to Ms. Curtis about discrimination by Mr. Terbecki, his treatment of LEFFLER only became worse in the form of retaliatory conduct towards her.

74.    LEFFLER asked Mr. Terbecki at least four (4) times to be assigned to a particular manufacturer's line of clothing. Each time LEFFLER made such a request, Mr. Terbecki gave the available line to a much younger sales associate who had far less sales experience.

75.    SAKS, through its managers, assigned all of the lucrative designer clothing lines to younger sales associates who had far less sales experience.

76.    It was not until there was a notice from the Store Manager that each sales associate had to be responsible for a specific line that LEFFLER was given a line; but not surprisingly, her line was combined with other lines and not just one line - which made her sales goals totally untrackable, thereby unreachable.

77.    Approximately four (4) months before LEFFLER was terminated, she told Noel Sugruee in Human Resources about the discriminatory manner in which she was being treated. Ms. Sugruee told her not to complain about anything or she could end up on the **third floor**. The third floor consisted of mostly older associates who had been moved from other departments and replaced by younger employees. The third floor had very little traffic and little potential for selling.

78.    LEFFLER was continually mistreated and harassed by the younger sales associates; and she brought her concerns about mistreatment and harassment by the younger employees towards her to her Manager, Raymond Terbecki, Human Resource Manager, Gloria Salerno, Assistant Store Manager, Mindy Curtis or the Assistant Department Manager, Michele.

79.    SAKS did not do anything to remedy the age discrimination or retaliatory treatment.

80.    LEFFLER'S working conditions became worse, and despite working hard and

10

continuing to bring in significant sales to SAKS each month, she was treated with little or no respect at all.

81.    LEFFLER was told on many occasions by her Manager, Raymond Terbecki, and by Gloria Salerno, Human Resources Manager, as well, that she had no rights.

82.    It became apparent to LEFFLER that SAKS was trying to push her out by making her experience at work so difficult that she would quit, but LEFFLER needed her job and wanted to continue to succeed at SAKS the way they she had before the age discrimination and retaliation became so pervasive.  LEFFLER wanted to be able to work with SAKS until the day that she retired.

83.    When it became apparent to SAKS that LEFFLER had no intention of quitting, SAKS management invented a scenario whereby she was falsely accused of "stealing" from the store.

84.    Specifically, in the later part of the summer of 2005, SAKS held a seminar for all of their sales associates in which they told them that they were "empowered", and as such, they were authorized to give customers in certain situations a 10% or more discount to meet the prices of the competition in the marketplace,  a 10% discount in the case of foreign customers attempting to open credit card accounts that required further processing, and a 10% discount for customers willing to purchase damaged merchandise.

85.    The store training program also instructed sales associates to make the customer feel comfortable during the return process and make the return based on the information presented by the customer and the information available in the SAKS computer system.

86.    In December 2005, in a meeting with other older employees and Gloria Salerno, Human Resources Manager, told LEFFLER not to cross her door with any complaints about anything.

87.     On April 3, 2006, LEFFLER, was called into the Security Office with Security Officer Jennifer Hanno, and was accused of "stealing" from SAKS by allowing said discounts and returns.

88.     LEFFLER was pressured by Security Officer, Jennifer Hanno, to sign a promissory note to SAKS that she would repay the monies that she allegedly "stole."

89.     LEFFLER signed the documents feeling as though she was under duress by Security Officer Hanno, and wrote in her own handwriting directly on the documents at the time of the meeting "I DID NOT STEAL."

90.     When LEFFLER requested copies of the documents presented to her, Ms. Hanno refused to give her a copy of anything that she was requested to sign.

91.     On April 5, 2006, LEFFLER spoke with Gloria Salerno, Human Resource Manager and asked her "What is the decision because you are treating me like I am stealing." Salerno replied, "Oh no, no.  We are not saying that and I will give you an answer today."

92.     On April 5, 2006, LEFFLER was terminated.

93.     Following her termination from SAKS, LEFFLER applied for unemployment compensation.

94.     Upon receipt of Determination Notice of Unemployment Compensation Claim Filed, SAKS contacted TALX – UC Express in the capacity of Unemployment Insurance Consultant and agent of SAKS.

95.     SAKS informed third party TALX – UC Express that LEFFLER was discharged because she was giving unauthorized discounts and making "fraudulent" returns to customers. On April 25, 2006, TALX' representative, Jacque Roulette, wrote a letter to Florida Agency for Workforce Innovation Claims Center providing the Agency with a statement from Gloria Salerno, SAKS' Human Resources Director, which Salerno had completed and sent to Roulette.

A copy of said letter is attached hereto and marked as Exhibit "E".

96.    In the statement Salerno supplied to Roulette, which Salerno clearly knew was to be forwarded by Roulette to the Agency for Workforce Innovation, Salerno wrote that LEFFLER was making "fraudulent" returns and directed Roulette to a spreadsheet in which LEFFLER was involved in "fraudulent" activity.  A copy of said statement is attached hereto and marked as Exhibit "F".

97.    On May 1, 2006, LEFFLER received a Notice of Determination informing her that her employment was denied, in that claimant "violated the employer's established rules."

98.    Based on the communication from the third party, Jacque Roulette to Hearing Officer Mayonne, LEFFLER's character was defamed and her unemployment compensation was unjustly denied.

99.    On May 17, 2006, LEFFLER made a written request to the Agency for Workforce Innovation appealing the May 1, 2006 determination.

100.    On October 24, 2006, a telephonic hearing was held for LEFFLER to appeal the May 1, 2006 determination.

101.    Jennifer Hanno, participated as an agent and representative for SAKS at the appeals hearing, at which time she testified to the Hearing Officer, a third party that LEFFLER was terminated for "stealing from the company" by giving unauthorized discounts to customers.

102.    Ultimately, the Agency for Workforce Innovation reversed its decision, and LEFFLER's unemployment compensation benefits were reinstated.

103.    Age was a motivating factor in SAKS decision to terminate LEFFLER from her employment.

104.    There existed no legitimate, non-discriminatory reason for SAKS to terminate LEFFLER'S employment.

DEUTSCH ROTBART & ASSOCIATES, P.A.

BOCA RATON • FORT LAUDERDALE • MIAMI

105.    LEFFLER was treated differently than the younger sales associates.

106.    As a direct, natural and proximate result of the actions of SAKS, LEFFLER has been injured, and has suffered a substantial loss of wages and benefits, embarrassment and ridicule.

107.    SAKS conduct towards LEFFLER was in complete reckless disregard for the well codified laws established in the FCRA as it pertains to age discrimination and retaliation.

### COUNT ONE/ PEREZ'S ADEA CLAIM

108.    Plaintiff PEREZ realleges and adopts, as if fully set forth, the allegations in paragraphs 1 through 59.

109.    As a direct, natural and proximate result of the actions of Defendant, PEREZ has been injured, suffering a loss of wages and benefits.  The acts of Defendant, as more particularly alleged above, constituted violations of 29 U.S.C. § 621, *et seq.*, and were done with a knowing reckless disregard of the ADEA'S proscriptions.

110.    PEREZ has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this action for permanent injunction and other relief is her only means of securing adequate relief.  PEREZ is suffering and will continue to suffer irreparable injury from the acts of Defendant.

WHEREFORE, Plaintiff PEREZ respectfully prays the court to

A.    Issue a declaratory judgment that Defendant's practices toward her are violative of her rights under the ADEA.

B.    Enjoin and permanently restrain Defendant and its agents and employees, from continuing or maintaining the policy, practice, or custom of denying, abridging, withholding, or conditioning the rights of employees on the basis of their age, which rights are secured against such behavior by the ADEA.

DEUTSCH ROTBART & ASSOCIATES, P.A.

BOCA RATON • FORT LAUDERDALE • MIAMI

C.      Enjoin Defendant to reinstate PEREZ, to make PEREZ whole, by paying back pay, prejudgment interest and fringe benefits; or if Defendant cannot hire PEREZ, or if reinstatement would be ineffective as a make-whole remedy, enjoin Defendant to pay front pay, fringe benefits and other compensation for a reasonable period of time.

D.      Enter a judgment for Plaintiff and against Defendant for any and all damages, including liquidated damages in an amount double to her lost wages and benefits.

E.      Provide any other relief as this Court deems necessary and proper.

F.      Grant Plaintiff her costs and a reasonable award of attorney's fees pursuant to 29 U.S.C. §216(b).

## COUNT TWO/ PEREZ'S RETALIATION CLAIM

111.    Plaintiff PEREZ realleges and adopts, as if fully set forth, the allegations in paragraphs 1 through 59.

112.     The adverse treatment to which Plaintiff was subjected to was based upon her opposition to an employment practice made illegal by the ADEA: Defendant did not engage in similar conduct toward employees who did not oppose employment practices made illegal by the ADEA.

113.    The conduct of Defendant deprived Plaintiff of her statutory rights under the ADEA, i.e., Plaintiff, by being subjected to the adverse treatment more particularly alleged above, suffered discrimination with respect to the "terms, conditions, or privileges of employment," because of her opposition to an employment practice made illegal by the ADEA.

114.    As a direct, natural, proximate and foreseeable result of the actions of Defendant, Plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

115.    The actions of Defendant were so malicious and in such reckless indifference to

DEUTSCH ROTBART & ASSOCIATES, P.A.

BOCA RATON • FORT LAUDERDALE • MIAMI

the state protected rights of Plaintiff as to entitle her receive an award of punitive damages to punish Defendant, and to deter it, and others, from such conduct in the future.

WHEREFORE, Plaintiff PEREZ prays that this court will:

A.     Issue a declaratory judgment that Defendant's practices toward them are violative of her rights under the ADEA.

B.     Enjoin Defendant and its agents and employees, from continuing or maintaining the policy, practice, or custom of denying, abridging, withholding, or conditioning the rights of employees on the basis of their opposition to an employment practice made illegal by the ADEA, rights against which behavior are secured by the ADEA.

C.     Enter a judgment for Plaintiff PEREZ and against Defendant for damages, including for liquidated damages.

D.     Grant Plaintiff PEREZ her costs and a reasonable award of attorney's fees pursuant to the ADEA.

## COUNT THREE/ PEREZ'S FCRA CLAIM

116.    Plaintiff PEREZ realleges and adopts, as if fully set forth, the allegations in paragraphs 1 through 59.

117.    The acts of Defendant SAKS, as more particularly alleged above, constituted violations of the Florida Civil Rights Act of 1992, as amended; Florida Statute §760.11 and were done with a knowing or reckless disregard of the Florida Civil Rights Act's proscriptions.

118.    The conduct of Defendant SAKS deprived Plaintiffs of their statutory rights under §760.10, Florida Statutes, i.e., PEREZ, by being subjected to the adverse treatment more particularly alleged above, suffered discrimination with respect to the "terms, conditions, or privileges of employment," because of her age.

119.    PEREZ has no plain, adequate, or complete remedy at law to redress the wrongs

DEUTSCH ROTBART & ASSOCIATES, P.A.

BOCA RATON • FORT LAUDERDALE • MIAMI

alleged herein, and her action for permanent injunction and other relief is her only means of securing adequate relief.  PEREZ is suffering and will continue to suffer irreparable injury from the acts of SAKS.

120.    The actions of Defendant were so malicious and in such reckless indifference to the state protected rights of Plaintiff as to entitle her to receive an award of punitive damages to punish Defendant, and to deter it, and others, from such conduct in the future.

121.    As a direct, natural, proximate and foreseeable result of the actions of Defendant, PEREZ has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, PEREZ prays that this court will:

A.    Issue a declaratory judgment that Defendant's practices toward her are violative of her rights under the FCRA, §760.01, *et seq*., Fla. Stat.

B.    Enjoin and permanently restrain Defendant and its agents and employees, from continuing or maintaining the policy, practice, or custom of denying, abridging, withholding, or conditioning the rights of employees on the basis of their age, which rights are secured against such behavior by the FCRA, §760.01, *et seq*., Fla. Stat.

C.    Enjoin Defendant to reinstate PEREZ, to make PEREZ whole, by paying back pay, prejudgment interest and fringe benefits; or if Defendant cannot hire PEREZ, or if rein- statement would be ineffective as a make-whole remedy, enjoin Defendant to pay front pay, fringe benefits and other compensation for a reasonable period of time.

D.    Enter a judgment for Plaintiff and against Defendant for any and all damages available to her as a result of Defendant violating Plaintiff's civil rights including exemplary damages.

E.    Provide any other relief as this Court deems necessary and proper.

17

DEUTSCH ROTBART & ASSOCIATES, P.A.

B O C A   R A T O N   •   F O R T   L A U D E R D A L E   •   M I A M I

F.      Grant Plaintiff her costs and a reasonable award of attorney's fees pursuant to §760.11 (b)(5), Fla. Stat.

### COUNT FOUR/ PEREZ'S CHAPTER §760 RETALIATION CLAIM

122.    Plaintiff PEREZ realleges and adopts, as if fully set forth, the allegations in paragraphs 1 through 59.

123.    The adverse treatment to which Plaintiff was subjected to was based upon her opposition to an employment practice made illegal by the Florida Civil Rights Act of 1992: Defendant did not engage in similar conduct toward employees who did not oppose employment practices made illegal by the Florida Civil Rights Act of 1992.

124.    The conduct of Defendant deprived Plaintiff of her statutory rights under §760.10, Fla. Stat., i.e., Plaintiff, by being subjected to the adverse treatment more particularly alleged above, suffered discrimination with respect to the "terms, conditions, or privileges of employment," because of her opposition to an employment practice made illegal by the Florida Civil Rights Act of 1992.

125.    As a direct, natural, proximate and foreseeable result of the actions of Defendant, Plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

126.    The actions of Defendant were so malicious and in such reckless indifference to the state protected rights of Plaintiff as to entitle her receive an award of punitive damages to punish Defendant, and to deter it, and others, from such conduct in the future.

WHEREFORE, Plaintiff PEREZ prays that this court will:

A.      Issue a declaratory judgment that Defendant's practices toward them are violative of her rights under the Florida Civil Rights Act of 1992, §760.10(7), *et seq*., Fla. Stat.

B.      Enjoin Defendant and its agents and employees, from continuing or maintaining

the policy, practice, or custom of denying, abridging, withholding, or conditioning the rights of employees on the basis of their opposition to an employment practice made illegal by the Florida Civil Rights Act of 1992, rights against which behavior are secured by the Florida Civil Rights Act of 1992, §760.01, *et seq.*, Fla. Stat.

C.    Enter a judgment for Plaintiff PEREZ and against Defendant for damages, including for exemplary damages.

D.    Grant Plaintiff PEREZ her costs and a reasonable award of attorney's fees pursuant to §760.11(b)(5), Fla. Stat.

### COUNT FIVE
### PEREZ'S DEFAMATION AGAINST SAKS

127.    Plaintiff PEREZ realleges and adopts, as if fully set forth, the allegations in paragraphs 1 through 59.

128.    As alleged, Defendant SAKS made the above referenced statements about Plaintiff and her employment at SAKS.

129.    The Defendant did not have a conditionally privileged occasion to make the statements as alleged herein.

130.    SAKS fabricated a reason to terminate PEREZ'S employment.  SAKS then related these fabricated statements to third party Jacque Roulette, of TALX - UC Express, who then, related said statements to the Florida Agency for Workforce Innovation Claims Center.  These statements were false and SAKS knew or should have known them to be false.  Said statements were made as a justification for what was in reality SAKS age discrimination based termination of PEREZ.

131.    Security Officer, Jennifer Hanno of SAKS Security Office, in the presence of a third party, Agency for Workforce Innovation, accused PEREZ of stealing from SAKS.  These

statements were false and SAKS knew or should have known them to be false.  Said statements were made as a justification for what was in reality SAKS age discrimination based termination of PEREZ.

132.    The foregoing statements and the alleged act that it embodies, is false, malicious, defamatory, libelous, and moreover was published in complete disregard of the obviously harmful effect on PEREZ'S reputation and good standing in the community, and were primarily motivated by malice when the statements were made in an effort to defame PEREZ.

133.    As a direct and proximate result of the false, malicious, and slanderous publication of the statements made by SAKS, SAKS terminated its employment of PEREZ.

134.    As a further direct and proximate result of the false, malicious and slanderous publications of the statements made by SAKS, PEREZ has lost her good standing in the sales community amongst certain companies with whom SAKS has business relationships with in the sales community.   PEREZ has also suffered great mental anguish and torment, loss of sleep, mental distress, emotional pain, suffering, loss of enjoyment of life and continuing humiliation shame and mortification.

WHEREFORE, Plaintiff demands judgment for damages SAKS, together with pre and post judgment interest and court costs, and any additional relief that this Court deems just and proper.

### COUNT SIX/ LEFFLER'S ADEA CLAIM

135.    Plaintiff LEFFLER realleges and adopts, as if fully set forth, the allegations in paragraphs 11 and 60 through 107.

136.    As a direct, natural and proximate result of the actions of Defendant, LEFFLER has been injured, suffering a loss of wages and benefits.  The acts of Defendant, as more particularly alleged above, constituted violations of 29 U.S.C. § 621, *et seq.*, and were done with

a knowing reckless disregard of the ADEA's proscriptions.

137.    LEFFLER has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this action for permanent injunction and other relief is her only means of securing adequate relief.  LEFFLER is suffering and will continue to suffer irreparable injury from the acts of Defendant.

WHEREFORE, Plaintiff LEFFLER respectfully prays the court to

A.    Issue a declaratory judgment that Defendant's practices toward her are violative of her rights under the ADEA.

B.    Enjoin and permanently restrain Defendant and its agents and employees, from continuing or maintaining the policy, practice, or custom of denying, abridging, withholding, or conditioning the rights of employees on the basis of their age, which rights are secured against such behavior by the ADEA.

C.    Enjoin Defendant to reinstate LEFFLER, to make LEFFLER whole, by paying back pay, prejudgment interest and fringe benefits; or if Defendant cannot hire LEFFLER, or if reinstatement would be ineffective as a make-whole remedy, enjoin Defendant to pay front pay, fringe benefits and other compensation for a reasonable period of time.

D.    Enter a judgment for Plaintiff and against Defendant for any and all damages, including liquidated damages in an amount double to her lost wages and benefits.

E.    Provide any other relief as this Court deems necessary and proper.

F.    Grant Plaintiff her costs and a reasonable award of attorney's fees pursuant to 29 U.S.C. §216(b).

## COUNT SEVEN/ LEFFLER'S RETALIATION CLAIM

138.    Plaintiff LEFFLER realleges and adopts, as if fully set forth, the allegations in paragraphs 11 and 60 through 107.

21

139.    The adverse treatment to which Plaintiff was subjected to was based upon her opposition to an employment practice made illegal by the ADEA: Defendant did not engage in similar conduct toward employees who did not oppose employment practices made illegal by the ADEA.

140.    The conduct of Defendant deprived Plaintiff of her statutory rights under the ADEA, i.e., Plaintiff, by being subjected to the adverse treatment more particularly alleged above, suffered discrimination with respect to the "terms, conditions, or privileges of employment," because of her opposition to an employment practice made illegal by the ADEA.

141.    As a direct, natural, proximate and foreseeable result of the actions of Defendant, Plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

142.    The actions of Defendant were so malicious and in such reckless indifference to the state protected rights of Plaintiff as to entitle her receive an award of punitive damages to punish Defendant, and to deter it, and others, from such conduct in the future.

WHEREFORE, Plaintiff LEFFLER prays that this court will:

A.    Issue a declaratory judgment that Defendant's practices toward them are violative of her rights under the ADEA.

B.    Enjoin Defendant and its agents and employees, from continuing or maintaining the policy, practice, or custom of denying, abridging, withholding, or conditioning the rights of employees on the basis of their opposition to an employment practice made illegal by the ADEA, rights against which behavior are secured by the ADEA.

C.    Enter a judgment for Plaintiff LEFFLER and against Defendant for damages, including for liquidated damages.

D.    Grant Plaintiff LEFFLER her costs and a reasonable award of attorney's fees

DEUTSCH ROTBART & ASSOCIATES, P.A.

BOCA RATON • FORT LAUDERDALE • MIAMI

pursuant to the ADEA.

### COUNT EIGHT/ LEFFLER'S FCRA CLAIM

143.    Plaintiff LEFFLER realleges and adopts, as if fully set forth, the allegations in paragraphs 11 and 60 through 107.

144.    The acts of Defendant SAKS, as more particularly alleged above, constituted violations of the Florida Civil Rights Act of 1992, as amended; Florida Statute §760.11 and were done with a knowing or reckless disregard of the Florida Civil Rights Act's proscriptions.

145.    The conduct of Defendant SAKS deprived Plaintiff of her statutory rights under §760.10, Florida Statutes, i.e., LEFFLER, by being subjected to the adverse treatment more particularly alleged above, suffered discrimination with respect to the "terms, conditions, or privileges of employment," because of her age.

146.    LEFFLER has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and her action for permanent injunction and other relief is their only means of securing adequate relief. LEFFLER is suffering and will continue to suffer irreparable injury from the acts of SAKS.

147.    The actions of Defendant were so malicious and in such reckless indifference to the state protected rights of Plaintiff as to entitle her receive an award of punitive damages to punish Defendant, and to deter it, and others, from such conduct in the future.

148.    As a direct, natural, proximate and foreseeable result of the actions of Defendant, LEFFLER has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, LEFFLER prays that this court will:

A.    Issue a declaratory judgment that Defendant's practices toward her are violative of her rights under the FCRA, §760.01, *et seq*., Fla. Stat.

DEUTSCH ROTBART & ASSOCIATES, P.A.

BOCA RATON • FORT LAUDERDALE • MIAMI

B.    Enjoin and permanently restrain Defendant and its agents and employees, from continuing or maintaining the policy, practice, or custom of denying, abridging, withholding, or conditioning the rights of employees on the basis of their age, which rights are secured against such behavior by the FCRA, §760.01, *et seq.*, Fla. Stat.

C.    Enjoin Defendant to reinstate LEFFLER, to make LEFFLER whole, by paying back pay, prejudgment interest and fringe benefits; or if Defendant cannot hire LEFFLER, or if reinstatement would be ineffective as a make-whole remedy, enjoin Defendant to pay front pay, fringe benefits and other compensation for a reasonable period of time.

D.    Enter a judgment for Plaintiff and against Defendant for any and all damages, including exemplary damages as a result of Defendant violating Plaintiff's civil rights.

E.    Provide any other relief as this Court deems necessary and proper.

F.    Grant Plaintiff her costs and a reasonable award of attorney's fees pursuant to §760.11 (b)(5), Fla. Stat.

## COUNT NINE/LEFFLER'S CHAPTER §760 RETALIATION CLAIM

149.    Plaintiff LEFFLER realleges and adopts, as if fully set forth, the allegations in paragraphs 11 and 60 through 107.

150.    The adverse treatment to which Plaintiff was subjected to was based upon her opposition to an employment practice made illegal by the Florida Civil Rights Act of 1992: Defendant did not engage in similar conduct toward employees who did not oppose employment practices made illegal by the Florida Civil Rights Act of 1992.

151.    The conduct of Defendant deprived Plaintiff of her statutory rights under §760.10, Fla. Stat., i.e., Plaintiff, by being subjected to the adverse treatment more particularly alleged above, suffered discrimination with respect to the "terms, conditions, or privileges of employment," because of her opposition to an employment practice made illegal by the Florida

24

Civil Rights Act of 1992.

152.     As a direct, natural, proximate and foreseeable result of the actions of Defendant, Plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

153.     The actions of Defendant were so malicious and in such reckless indifference to the state protected rights of Plaintiff as to entitle her to receive an award of punitive damages to punish Defendant, and to deter it, and others, from such conduct in the future.

WHEREFORE, Plaintiff LEFFLER prays that this court will:

A.     Issue a declaratory judgment that Defendant's practices toward them are violative of her rights under the Florida Civil Rights Act of 1992, §760.10(7), *et seq*., Fla. Stat.

B.     Enjoin Defendant and its agents and employees, from continuing or maintaining the policy, practice, or custom of denying, abridging, withholding, or conditioning the rights of employees on the basis of their opposition to an employment practice made illegal by the Florida Civil Rights Act of 1992, rights against which behavior are secured by the Florida Civil Rights Act of 1992, §760.01, *et seq*., Fla. Stat.

C.     Enter a judgment for Plaintiff LEFFLER and against Defendant for damages, including for exemplary damages.

D.     Grant Plaintiff LEFFLER her costs and a reasonable award of attorney's fees pursuant to §760.11(b)(5), Fla. Stat.

## COUNT TEN/LEFFLER'S DEFAMATION AGAINST SAKS

154.     Plaintiff LEFFLER realleges and adopts, as if fully set forth, the allegations in paragraphs 11 and 60 through 107.

155.     As alleged, Defendant SAKS made the above referenced statements about Plaintiff and her employment at SAKS.

DEUTSCH ROTBART & ASSOCIATES, P.A.

BOCA RATON  •  FORT LAUDERDALE  •  MIAMI

156.    The Defendant did not have a conditionally privileged occasion to make the statements as alleged herein.

157.    SAKS fabricated a reason to terminate LEFFLER's employment.  SAKS then related these fabricated statements to third party Jacque Roulette, of TALX - UC Express, who then, related said statements to the Florida Agency for Workforce Innovation Claims Center.  These statements were false and SAKS knew or should have known them to be false.  Said statements were made as a justification for what was in reality SAKS age discrimination based termination of LEFFLER.

158.    Security Officer, Jennifer Hanno of SAKS Security Office, in the presence of a third party, Agency for Workforce Innovation, accused LEFFLER of stealing from SAKS.  These statements were false and SAKS knew or should have known them to be false.  Said statements were made as a justification for what was in reality SAKS age discrimination based termination of LEFFLER.

159.    The foregoing statements and the alleged act that it embodies, is false, malicious, defamatory, libelous, and moreover was published in complete disregard of the obviously harmful effect on LEFFLER'S reputation and good standing in the community, and were primarily motivated by malice when the statements were made in an effort to defame LEFFLER.

160.    As a direct and proximate result of the false, malicious, and slanderous publication of the statements made by SAKS, SAKS terminated its employment of LEFFLER.

161.    As a further direct and proximate result of the false, malicious and slanderous publications of the statements made by SAKS, LEFFLER has lost her good standing in the sales community amongst certain companies with whom LEFFLER has business relationships with in the sales community.   LEFFLER has also suffered great mental anguish and torment, loss of sleep, mental distress, emotional pain, suffering, loss of enjoyment of life and continuing

DEUTSCH ROTBART & ASSOCIATES, P.A.

BOCA RATON • FORT LAUDERDALE • MIAMI

humiliation shame and mortification.

WHEREFORE, Plaintiff demands judgment for damages SAKS, together with pre and post judgment interest and court costs, and any additional relief that this Court deems just and proper.

## JURY DEMAND

Plaintiffs herein demand trial by jury of all issues in this action.

> DEUTSCH ROTBART & ASSOCIATES, P.A.
> Counsel for Plaintiffs
> 7251 West Palmetto Park Road, Suite 206
> Boca Raton, Florida 33433
> Telephone:  561.361.8010
> Facsimile:  561.361.8086
>
>
> BY: _____Erika Deutsch Rotbart s/._____
>        Erika Deutsch Rotbart, Esq.
>        Florida Bar No.: 0047686

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 28th day of August, 2007, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing is being served this day upon all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

> Respectfully submitted,
>
> DEUTSCH ROTBART & ASSOCIATES, P.A.
>
> BY: _____Erika Deutsch Rotbart s/._____
>        Erika Deutsch Rotbart, Esq.
>        Florida Bar No.: 0047686

27

## SERVICE LIST

### Lana Perez and Elena Leffler v. SAKS Fifth Avenue, Inc.

### CASE NO.: 07-21794-CIV-MOORE/Garber

Erika Deutsch Rotbart, Esquire
Florida Bar No. 0047686
edrotbart@comcast.net
Deutsch Rotbart & Associates, P.A.
7251 West Palmetto Park Road, Suite 206
Boca Raton, Florida 33433
Tel:  561.361.8010
Fax:  561.361.8086
Counsel for Plaintiff


Elizabeth Pryor Johnson, Esquire
Florida Bar No. 920990
ejohnson@fowler-white.com
Fowler White Burnett
Espirito Santo Plaza, Fourteen Floor
1395 Brickell Avenue
Miami, FL 33131
Tel:  305.789.9200
Fax:  305.728.7507
Counsel for Defendant

DEUTSCH ROTBART & ASSOCIATES, P.A.

BOCA RATON • FORT LAUDERDALE • MIAMI