UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| LANA PEREZ and ELENA LEFFLER ) | CASE NO. 07-21794 |
| ) | MOORE/SIMONTON |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| SAKS FIFTH AVENUE, INC., ) | |
| a foreign profit corporation doing ) | |
| business in Florida, ) | |
| ) | |
| Defendant. ) | |
| _____ / | |

**PLAINTIFFS' MOTION FOR FRONT PAY IN LIEU OF
REINSTATEMENT WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiffs, ELENA LEFFLER ("LEFFLER") and LANA PEREZ ("PEREZ"), by and through their undersigned counsel, move this Court to order Defendant, SAKS FIFTH AVENUE, INC. ("SAKS") to pay Plaintiffs front pay in lieu of reinstatement as more specifically set forth below.

**I.    Introduction and Facts Relevant to this Motion**

Plaintiffs' age discrimination and retaliation matter was tried to a jury from September 15 to September 25, 2008. The jury rendered a verdict in favor of the Plaintiffs and awarded LEFFLER $94,000 in lost wages and benefits; $50,000 in emotional distress damages; $94,000 for liquidated damages under the Age Discrimination in Employment Act ("ADEA") and $6,000 in punitive damages under the Florida Civil Rights Act ("FCRA"). The jury awarded PEREZ $135,000 in lost wages and benefits; $100,000 in emotional distress damages; and $135,000 in liquidated damages under the ADEA because the Defendant's conduct was willful. The special

jury verdict form and the Court's jury charge, which limited punitive damages, prevented any additional punitive damages award under the FCRA.  On September 26, 2008, the Court entered judgment in favor of Plaintiffs.

In their Second Amended Complaint, at Counts I and VI, the Plaintiffs requested front pay to make them whole as reinstatement, in this case, is not feasible. Specifically, the hostility of the work environment prior to Plaintiffs' termination, the pretextual reasons that Defendant has stated for Plaintiffs' terminations, and the overall emotional effect on both Plaintiffs for their years of prior employment makes it nearly impossible for either of them to return to SAKS.  Accordingly, it would be in all parties' best interests to solely award front pay to Plaintiffs.

During the trial, PEREZ testified that she would have continued to work at SAKS until she was 65 years of age.  Similarly, LEFFLER testified that she would have continued to work at SAKS until she was 70 years of age.  PEREZ testified that she began her employment at SAKS in 1988, and was employed there for eighteen (18) years, and was 54 years old when she was terminated at the beginning of April 2006. LEFFLER testified that she began her employment at SAKS in 1992, and was employed there for fourteen (14) years, and was 59 years old at the time of her termination at the beginning of April 2006.  At trial, each of the Plaintiffs tax returns and W-2 Forms for 2005, 2006 and 2007 were admitted into evidence.  *See* Plaintiffs' Trial Exhibits 239 and 240.  In 2005, while employed by SAKS, PEREZ earned $39,793. *See* Plaintiffs' Trial Exhibit 239. In 2006, the year of her termination, PEREZ earnings from work at Bloomingdales were $15,576 and in 2007, the year after her termination, PEREZ'S earnings from working at Bloomingdales was $12,372.49. *Id.*  However, PEREZ testified

that based upon her sales for the first quarter of 2006, she was tracking record in a manner consistent where she expected to earn approximately $45,000 for the year. PEREZ obtained a position with Bloomingdales several months after her termination from SAKS, but she was involuntarily terminated from that position in 2007, after being unable to make sales goals and open the required number of credit card accounts. PEREZ testified that she is continuing to seek employment, but had not found a job as of the date of trial.

PEREZ testified that she must pay $1,100 monthly to obtain comparable health insurance that she had while employed by SAKS - which cost her approximately $200 per month when she was employed there. As for her retirement benefits, PEREZ was also making the appropriate contributions to maximize SAKS matching her 401k by having 5% of her annual salary in SAKS retirement plan, of which SAKS matched 100% of her contributions of up to 5% of her annual income. PEREZ also testified that SAKS had a separate pension plan that she was "grandfathered" into as a result of her longstanding tenure, and that SAKS contributed an amount equal to 3% of her gross annual income into a separate account until she was terminated with no contribution required of her.

LEFFLER testified that she earned approximately $60,000 per year while employed by SAKS. In 2006, the year of her termination, she earned $49,039 from working at SAKS and Bloomingdales combined; however, she testified that she had been on track at SAKS to make approximately $80,000 for the year had she continued at SAKS based upon her first quarter earnings of $21,500. *See* Plaintiffs' Trial Exhibit 240. In 2007, the year following her termination, LEFFLER'S earnings from working at

Bloomingdales were $61,562.[1]  LEFFLER testified that she obtained a position as a sales associate at Bloomingdales the month following her termination from SAKS. Although LEFFLER testified that she is presently employed by SAKS, she stated that she received a thirty (30) day warning from her manager for not meeting sales and account goals at work.

## II.   Legal Analysis

"It is the duty of the district court, after a finding of discrimination, to place the injured party in the position he or she would have been absent the discriminatory actions."  *Nord v. United States Steel Corp.*, 758 F.2d 1462, 1470 (11th Cir. 1985).  In contrast to back pay, issues of front pay and reinstatement are "for the trial judge, and not the jury to decide." *See United States Equal Employment Opportunity Commission v. W & O, Inc.*, 213 F.3d 600, 618 (11th Cir. 2000).  Front pay is "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement. *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846, 121 S. Ct. 1946, 150 L.Ed.2d 62 (2001).  The ADEA authorizes the trial court to award equitable relief to prevailing plaintiffs.   *See* 29 U.S.C. 626(b) (ADEA). The purpose of equitable relief is to "make the plaintiff 'whole,' to restore the plaintiff to the economic position the plaintiff would have occupied but for the illegal discrimination of the employer". *Farley v. Nationwide Mutual Insurance Co.*, 197 F.3d 1322, 1338 (11th Cir. 1999).  Although this jurisdiction prefers reinstatement,[2] reinstatement is not always required as equitable

---

[1] LEFFLER is not pursuing front pay of her health or retirement benefits because she is eligible and receives them through her current employer which she believes are fairly comparable.

[2] However, as the Middle District Court of Florida advised in *Reiner v. Family Ford, Inc.*, 146 F.Supp.2d 1279, 1285 (M.D.Fla.2001) "[d]espite its widespread status as the 'preferred' remedy, virtually every circuit court of appeals has recognized that under certain circumstances reinstatement may be an inappropriate-if not an impracticable or impossible-remedy" quoting *Ogden v. Wax Works, Inc.*, 29

relief. *Id.* at 1339. The courts have recognized that when extenuating circumstances warrant, a trial court may award a plaintiff front pay in lieu of reinstatement. *See Castle v. Sangamo Weston Inc.*, 837 F.2d 1550, 1563 (11th Cir.1988) (noting that reinstatement may not be "a viable form of relief due to the surrounding circumstances"). Such circumstances include situations where "discord and antagonism between the parties would render reinstatement ineffective as a make-whole remedy." *Goldstein v. Manhattan Industries, Inc.,* 758 F.2d 1435, 1449 (11th Cir.), reh'g den.,765 F.2d 154 (11th Cir.1985); *see also Wilson v. S&L Acquisition Co.*, 940 F.2d 1429, 1438 (11th Cir.1991) (recognizing that "[t]he general rule is that prospective damages are awarded in lieu of reinstatement when it is not feasible to reinstate the employee"); *Mt. Haskins v. City of Boaz*, 822 F.2d 1014, 1015 (11th Cir.1987) (noting that front pay "is an appropriate [equitable] remedy when reinstatement is impracticable or inadequate") (citation omitted).

    While a trial court should 'carefully articulate' its reasons for awarding front pay in lieu of reinstatement, the task is not difficult, here. *See Farley*, 197 F.3d at 1339. In *Farley*, which is analogous to this case, the trial court awarded front pay instead of reinstatement because of the emotional well-being of the plaintiff, and the fact that the plaintiff was subjected to a hostile work environment in that case. *Farley* at 1339. When the defendant's management has intimidated or threatened the plaintiff, or when the discharge harmed the plaintiff's emotional well-being, reinstatement is not the appropriate remedy. *See W & O, Inc.*, 213 F.3d at 619. In this case, both Plaintiffs testified that the termination of their employment after so many years of service left

---

F.Supp.2d 1003, 1008 (N.D. Iowa 1998), aff'd on other grounds, 214 F.3d 999 (8th Cir.2000) (citing *Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1423-24 (4th Cir.).

them both emotionally scarred. PEREZ'S psychologist increased her medication just prior to her termination, and she testified that she was under extreme emotional stress and trauma from losing her employment at SAKS. LEFFLER was extremely concerned with how management was treating them during this time, and it was clear to each of them that they were experiencing this treatment as a result of complaining about age discrimination.

In addition to the emotional harm, which was further substantiated by the jury's award of emotional distress damages, it would not be feasible for the Plaintiffs to be reinstated to their former positions under former supervisor, Raymond Terbecki ("Terbecki"). Terbecki made age related comments; retaliated against the Plaintiffs; told them they had no rights as employees; and threatened them with transfers and warnings. Furthermore, the jury evidently concurred that Mr. Terbecki together with Human Resources Director, Gloria Salerno, had also threatened the Plaintiffs, and each had participated in the orchestration of their terminations. Evidence was also submitted to the jury that the Bal Harbour store under the management of Managing Store Vice President Debra Slack was seeking younger employees. Moreover, the ages of the employees that were being hired into the Contemporary Department where Plaintiffs' worked was becoming increasingly younger. The trial was also replete with evidence of animosity and turmoil between sales associates in the Contemporary Department. Moreover, some of the employees with whom the Plaintiffs' worked were brought into the courtroom to testify against them further raising a hostile, antagonistic and what ultimately would be perceived as an unproductive behavior towards them. Thus, to reinstate Plaintiffs to that work environment is not a feasible remedy. *See Armstrong v.*

*Charlotte County Board of County Commissioners,* 273 F.Supp.2d 1312, 1314 (M.D. Fla. 2003) (where significant emotional distress damages were awarded and the case involved not only wrongful termination, but also harassment and retaliation, the acrimony between plaintiff and her supervisor and the discord within the department during plaintiff's employment were prevalent themes throughout the trial front pay was awarded in lieu of reinstatement).

Inherent in any award of prospective relief, such as front pay, is "some risk of uncertainty." *Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1349 (11th Cir.2000). That uncertainty does not in and of itself preclude a front-pay award. Generally, the plaintiff's testimony of her earnings at the time of termination and reasonable earnings increases are sufficient. *See Armstrong* at 1316. Defendant must demonstrate how the figures are inaccurate or excessive to challenge the front pay determination. *See Virgo v. Riviera Beach Associates, Ltd.*, 30 F.3d 1350, 1364 (11th Cir.1994). The *Munoz* court held that awarding front pay to plaintiffs within eight (8) years of normal retirement age does not require unreasonable speculation because when "discrimination plaintiffs are near the age of retirement, this court has signaled its comfort with awarding front pay." Id. at 1349 (citing, Lewis v. Federal Prison Industries, Inc., 953 F.2d 1277, 1280 (11th Cir. 1992).

As well, lost benefits are appropriate awards to be included in front pay as well as backpay. *Armstrong* at 1316. In order to effectuate the "make-whole" purpose of the remedies provided by the federal and state employment discrimination statutes, the courts find that an award for lost benefits is appropriate regardless of whether plaintiff has actually incurred costs in replacing those benefits. *Id.* Front-pay awards should

replicate the effects of reinstatement, which benefits would have included these benefits and which plaintiff lost by virtue of defendant's illegal discrimination. *Id.*  Thus, Perez is entitled to front pay for her health benefits, 401 and pension retirement benefits that she lost as a result of SAKS wrongful conduct.  The *Munoz* court also held that a liquidated damages award does not influence whether or not front pay is also awarded to an age discrimination plaintiff.  *Munoz* at 1349.

A plaintiff's age, the plaintiff's "entirely reasonable intention" to remain with the offending employer until retirement, the length of time other employees typically held the position lost to the plaintiff employee, and plaintiff's efforts to mitigate damages may be helpful in determining front pay.  *Barbour v. Merrill*, 48 F.3d 1270, 1280 (D.C. Cir. 1995). A plaintiff "must mitigate her damages by seeking employment 'substantially equivalent' to the position [from which] she was [terminated]."  *EEOC v. Joe's Stone Crab, Inc.*, 15 F.Supp.2d 1364, 1378 (S.D. Fla. 1998).  While a plaintiff has a duty to exercise reasonable diligence to mitigate her damages, the burden is on the defendant to prove a plaintiff's failure to discharge her duty.  *Id.* at 1378.  Although PEREZ was terminated from Bloomingdales, there is no *per se* denial of front-pay damages when the plaintiff obtains and subsequently loses mitigating employment. *Lewis v. Quaker Chemical Corp.,* 229 F.3d 1152 (6th Cir. 2000) (where the court found, Lewis sought further employment after the termination of his post-Quaker position and absent a showing that Lewis voluntarily left his post-Quaker position and failed to pursue further mitigating employment, front-pay damages are not an abuse of the court's discretion).[3]  In addition, an employee's testimony that she consistently pursued employment following

---

[3]*Sennello v. Reserve Life Ins. Co.*, 667 F. Supp. 1498, 1513-14 (S.D.Fla.1987), aff'd on other grounds, 872 F.2d 393 (11th Cir.1989)) (where plaintiff voluntarily quits subsequent employment, which is **not** the situation in PEREZ'S case, the front pay is reduced).  *See also, Reiner* at 1288 (emphasis added).

her termination although she did not record employment inquiries is sufficient to establish that she mitigated her damages in ADEA case. *Munoz* at 1347-48.

The *Lewis* court found that plaintiff would have remained with his employer for four (4) years, until his time of retirement. *Lewis* at 1280. *See also Boehm v. American Broadcasting Co., Inc.*, 929 F.2d 482, 488 (9th Cir. 1991) (awarding front pay to retirement for six (6) years); *Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 355 (1st Cir. 1998) (awarding front pay to retirement for six (6) years in an amount of $1,000,000). Other courts of appeal have awarded front-pay until retirement. In *Mathieu v. Gopher News Co.*, 273 F.3d 769 (8th Cir. 2001), the court awarded eight (8) years of front pay because the plaintiff was fifty-seven (57) years old at the time the trial concluded, and the award of eight years front pay covered the remainder of the plaintiff's career. In *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1189 (2nd Cir. 1992), the court upheld a front pay award of $667,000, covering the work life of the plaintiff, which was estimated to be seventeen (17) years. Finally, in *Cummings v. Std. Register Co.*, 265 F.3d 56 (1st Cir. 2001), the court sustained a front pay award over a period of fourteen (14) years where court found sufficient evidence to conclude that Cummings would be unable to find employment comparable to Standard Register's until his estimated retirement date.

In this case, PEREZ requests front pay until her expected retirement age of 65 years of age. Since she is currently 57 years of age, she is seeking eight (8) years of front pay. Based upon her income for 2006 and 2007, it is reasonable that she could earn up to $15,000 per year to mitigate her damages. It is also reasonable that PEREZ would have earned $45,000 a year had she continued to be employed by SAKS. Thus, PEREZ requests that the Court award her $30,000 times eight (8) years or $210,000.

PEREZ also requests that her front pay award include $105,600 for health insurance benefits (e.g. $1,100 x 12 months x 8 years = $105,600) and retirement benefits commensurate with SAKS' pension plan at the time of her termination based on her contribution of 3% of her gross annual earnings and SAKS (e.g. $1,350 x 8 years = $10,800); and SAKS 401k plan which provides a 100% match up to 5% of income (e.g. $2,250 x 8 years = $18,000).  Thus, the total front pay that PEREZ is seeking in wages and benefits is $334,400.

LEFFLER requests front pay until her expected retirement at 70 years of age, and since she is currently 61 years of age, is seeking nine (9) years of front pay. LEFFLER has mitigated her damages by finding a comparable job, but her earnings will remain about $60,000 a year as opposed to $80,000 that she would have earned had she remained employed by SAKS.  Under these circumstances, LEFFLER requests that the Court award front pay of $20,000 times 9 years for a total of $180,000.

Specifically, Plaintiffs are being extremely conservative in their requests for front pay as they are not seeking cost of living or annual increases in arriving at these calculations, despite the fact that they each testified at trial that their books of business were consistently growing and their commissions and income would have increased accordingly each year.  Thus, the amount each Plaintiff is seeking is a fair and reasonable calculation that excludes any "potential" and/or "speculative" variables.

### III.   *Conclusion*

WHEREFORE, the Plaintiffs respectfully request the Court award front pay to them consistent with the reasonable amounts requested herein and grant such other equitable relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

DEUTSCH ROTBART & ASSOCIATES, P.A.
Counsel for Plaintiffs
7251 West Palmetto Park Road
Suite 206
Boca Raton, Florida 33433
Telephone:  561.361.8010
Facsimile:   561.361.8086


BY:    Erika Deutsch Rotbart s/.    
       Erika Deutsch Rotbart, Esq.
       Florida Bar No.: 0047686

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on **October 6, 2008**, the foregoing document was electronically filed with the Clerk of the court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in a manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

DEUTSCH ROTBART & ASSOCIATES, P.A.


BY:    Erika Deutsch Rotbart s/.    
       Erika Deutsch Rotbart, Esq.
       Florida Bar No.: 0047686


## SERVICE LIST
*Lana Perez and Elena Leffler v. Saks Fifth Avenue, Inc.*
*CASE NO.: 07-21794-CIV-MOORE/SIMONTON*

Justin B. Uhlemann, Esq.
McDermott Will & Emery LLP
201 South Biscayne Boulevard
Suite 2200
Miami, FL 33131-4336
Telephone: 305.358.3500
Facsimile:   305.347.6500
E-mail: juhlemann@mwe.com

Joel E. Cohen (pro hac vice)
E-mail: jcohen@mwe.com
Katherine D. Kale (pro hac vice)
E-mail: kkale@mwe.com
Carolyn T. Schiff (pro hac vice)
E-mail: cschiff@mwe.com
340 Madison Avenue
New York, New York 10173-1922
Tel: 212.547.5400
Fax: 212.547.5444


Erika Deutsch Rotbart, Esq.
Deutsch Rotbart & Associates, P.A.
7251 West Palmetto Park Road
Suite 206
Boca Raton, FL 33433
Telephone:  561.361.8010
Facsimile:   561.361.8086
E-mail:  edrotbart@comcast.net